IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,955

In the Matter of JASON M. JANOSKI,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed September 2, 2022. One-year suspension.

*Kathleen Selzler Lippert*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio,* of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause, and *Jason M. Janoski*, respondent, argued the cause pro se.

PER CURIAM:  The Office of the Disciplinary Administrator filed this original action on July 14, 2021, against the respondent, Jason M. Janoski, an attorney admitted in 2010 to the practice of law in Kansas. The complaint alleged violations of the Kansas Rules of Professional Conduct (KRPC). On August 3, 2021, the respondent filed an answer to the complaint. On September 1, 2021, the respondent filed a proposed plan of probation.

On September 22, 2021, a hearing panel conducted a formal hearing by Zoom. The respondent appeared with counsel.

After the hearing, the panel made findings of fact and conclusions of law, together with its recommendation to this court. Relevant portions of the panel's findings and conclusions are quoted below.

1

"*Findings of Fact*

"12.     The hearing panel finds the following facts, by clear and convincing evidence:

"13.     The respondent and E.H. were married and had three children.

"14.     The respondent is an alcoholic. He did not acknowledge or accept that he is an alcoholic until December 2019. In late 2016 or early 2017, the respondent began to drink in secret. The respondent's alcohol consumption dramatically increased in the fall of 2018. The respondent testified that in the winter of 2019, he believed that if he took one more drink he would die, but that if he did not drink he would die. The respondent testified that he consumed alcohol before work and during lunch when working as an attorney.

"15.     In 2018, E.H. filed an action in divorce, in Sumner County District Court, case number 18DM46. Since the time the divorce action was filed, E.H. has continuously been represented by counsel. During that same time, the respondent has, at times, been represented and at other times, represented himself. The respondent has had three separate attorneys represent him during this time.

"16.     Our Family Wizard ('OFW') is an Internet platform designed to assist parents in communicating about their children. It has messaging and scheduling features. The program is designed so the parties, their counsel, and the court can view all messages sent through OFW.

"17.     In November 2018, the district court entered a permanent parenting plan. Both parties agreed to the parenting plan. In the agreed permanent parenting plan, the court established communication avenues between the respondent and E.H. Specifically, the order permitted the parties to communicate through telephone, text messaging, or Our Family Wizard ('OFW'). Under the permanent parenting plan, the court ordered the

2

parties to each visit the OFW website and enroll as a user within 10 days of the date the permanent parenting plan was filed.

"18. The respondent refused to communicate through OFW.

"19. From January 1, 2019, through June 21, 2019, the respondent sent E.H. a total of 268 text messages. Some of the messages were demeaning and disrespectful to E.H. Because the messages were not sent using OFW, the messages were not available for counsel and the district court to review.

"20. In March 2019, the court entered a journal entry of judgment and decree of divorce.

"21. On April 9, 2019, E.H. asked two family members to pick up the children from a visit with the respondent. The respondent refused to allow the children to go with the two family members. As a result, E.H. summoned the police. When E.H. arrived at the exchange location, the respondent released the children to E.H.

"22. During the time the respondent was representing himself in the divorce case, the respondent communicated with E.H. regarding substantive issues related to the divorce without the permission of E.H.'s counsel. By way of example:

"a. On January 4, 2019, the respondent sent a text message to E.H. that provided, 'I sent you an email just now. It is your attorney's letter. Please let me know if you approve of its contents before I respond to your attorney.'

"b. Beginning on April 3, 2019, the following text exchange occurred between the respondent and E.H.:

'[From the respondent] [E.H.], you are required by court order to communicate with me by telephone or text message. I will also allow email. As I've told you many times, please do not attempt to communicate with me by the portal or expect that I will read it. I will not.'

'[From E.H.] I responded to all your requests on the OFW. Thank you! I know you can easily see the messages on your phone the same way you could an email. All the info pertaining to the kids' schedule, grades, vaccination questions, aviation time etc. will be answered on there! Thanks.

'[From E.H.] *vacation time'

'[From the respondent] So you are openly defying the court order. Duly noted. I offered your attorney a compromise and I suggest you talk to him about it. If it is not accepted, we will have to resolve this in Wellington on a motion to compel compliance. . . .

'[From the respondent] Please see paragraph seven, in which it says that while the parties may use the portal, the parties shall continue to communicate by telephone and text messaging regarding the children.

'[From the respondent] I don't know how it could be more clear. We are both required to communicate by telephone or text.'

"c.      On June 12, 2019, and June 13, 2019, the following exchange occurred between the respondent and E.H.:

'[By the respondent] I need to know first thing tomorrow morning whether we are going to have hearings on the motion to modify support and your request not to homeschool. I will need to prepare and file a motion to modify child support tomorrow. Please let me know by 9 AM.

'[By the respondent] $300/hr on these seems dumb to me, but it's up to you. Thanks'.

'[By E.H.] I have asked you to please not text me at night anymore.

4

'[By E.H.] Also, I understand you want this done. But I would appreciate if you would stop making legal demands/threats. I have let my attorney know you want reduced child support payments.'

'[By the respondent] It's not a threat. I'm going to be out of the state next week. In order to get a hearing this month, I'm going to have to prepare and file a motion today. I've been asking you for three weeks and you still haven't got me an answer. I can't afford my rent without a modification and it needs done.'

"23.    Additionally, the respondent communicated directly with E.H.'s attorney at times when the respondent was represented by counsel. The respondent continued to directly communicate with E.H.'s attorney even after his attorney directed him to discontinue that practice.

"24.    On April 9, 2019, April 27, 2019, and May 21, 2019, the respondent threatened to sue E.H. in small claims court for damage caused to a hat and for E.H.'s failure to provide him with other personal items. At the hearing on the formal complaint, the respondent acknowledged that his threat to sue had no merit.

"25.    Based on the respondent's 'threatening and harassing texts [*sic*] messages and in face confrontations,' the respondent's son's baseball coaches indicated that the child would be removed from the team if the respondent's conduct continued.

"26.    The respondent unnecessarily complicated the divorce. By way of example:

"a.    The respondent sent several email messages to E.H.'s attorney asking the attorney to agree that a week consists of seven 24 hour periods of time.
"b.    The respondent accused E.H.'s attorney of an 'ethics violation' for allowing 'non-clients [to] attend attorney client meetings and knowingly giving up privilege.'
"c.    During the pendency of the divorce, the respondent made unreasonable demands. The respondent indicated his willingness to agree to bifurcate and expedite the

5

divorce, provided the decree included language that 'God wants all marriages to be reconciled' and if E.H. and the respondent agreed 'to not remarry anyone but each other, or that marriage [would] be void.'

"27.	Because of the nature and volume of the text messages sent by the respondent, on July 16, 2019, through counsel, E.H. filed a motion to limit communication between the parties.

"28.	On August 15, 2019, the respondent married J.J.

"29.	On August 31, 2019, while attending his youngest child's soccer game, the respondent harassed and yelled at E.H. The respondent also followed E.H. and would not leave her alone. When their five-year-old tried to sit on E.H.'s lap, the respondent removed his son from E.H.'s lap.

"30.	On September 3, 2019, the respondent's oldest child was participating in baseball practice with his team. Initially, the respondent and L.H., E.H.'s father, were present and E.H. was not present. Before E.H. arrived, the respondent followed L.H. Several times, L.H. moved his chair away from the respondent and each time, the respondent followed L.H., harassing him. The respondent called L.H. profane names and described E.H.'s mother as an unstable lunatic to L.H. The respondent whispered in L.H.'s ear demeaning names and threats, including that L.H. was a 'weak man,' that L.H. was a 'bitch,' and that the respondent would follow L.H. everywhere. The respondent stated, 'I'm going to be right here the rest of your life.' The respondent came so close to L.H. when he was whispering in his ear that the respondent's lips touched L.H.'s ear.

"31.	After E.H. arrived, E.H. and L.H. were seated in lawn chairs outside the fenced-in field area watching practice. The respondent continued the same conduct and began harassing E.H. At one point, while the youngest child sat on E.H.'s lap, the respondent sat between E.H. and L.H. and leaned against E.H.'s legs and the child's legs, frightening E.H. L.H. interrupted the practice and asked the coach to intervene. The baseball coach tried to convince the respondent to stop his conduct. The baseball coach

6

told the respondent that he was only hurting his children. The respondent continued his intimidating conduct even after the admonition by the baseball coach.

"32.    While using her mobile phone to video record the respondent's words and actions, the respondent knocked the mobile phone from E.H.'s hand. After knocking the mobile phone from E.H.'s hand, the respondent claimed it was an accident and falsely claimed that something fell out of his hand which caused the phone to fall. During the altercation, the respondent said to L.H. and E.H. that he hoped their pocketbooks were deep because he expected this to be a '$20,000 project.' The respondent also told E.H., 'I've got unlimited money to fight you.'

"33.    E.H.'s two younger children, the respondent's current wife, J.J., and the respondent's two step-children were also present during practice. E.H., L.H., and the children were frightened and intimidated.

"34.    During the hearing on the formal complaint, the respondent admitted that he intentionally hit the mobile phone out of E.H.'s hand.

"35.    As a result of his actions on September 3, 2019, the respondent was charged with battery against E.H. in Wichita Municipal Court.

"36.    On September 5, 2019, L.H. filed a petition seeking a protection from stalking order. The district court granted L.H. a temporary order prohibiting the respondent from stalking L.H. (On October 29, 2020, the court dismissed the protection from stalking order because the temporary order had been on file over a year and the court lacked jurisdiction to extend the temporary order.)

"37.    On September 6, 2019, E.H. filed a petition seeking a protection from abuse order. In the petition, E.H. sought an order prohibiting the respondent from contacting her and their three children. The district court granted E.H. a temporary order prohibiting the respondent from contacting her and their children. On November 20, 2019, Mr. Olson entered his appearance on behalf of E.H.

7

"38.     In September or October 2019, the respondent underwent a psychological evaluation with Lance Parker, Ph.D. Dr. Parker diagnosed the respondent with anxiety disorder not otherwise specified, intermittent explosive disorder, and narcissistic personality traits. During the evaluation, the respondent lied to the evaluator regarding his alcohol consumption. As a result, Dr. Parker did not make any diagnoses regarding the respondent's alcohol abuse. The respondent testified that he did not receive a copy of the report and he was unaware of the two of the diagnoses 'for a long time.' The respondent commenced treatment with Dr. Parker.

"39.     On September 18, 2019, E.H. filed a motion to modify residency and parenting time. However, on November 5, 2019, E.H. withdrew the motion because of the pending criminal case and the pending petition for protection from abuse order.

"40.     On October 4, 2019, the court granted the motion filed in July 2019, to limit communication. The Court ordered that unless 'emergent or substantive matters require immediate communication via telephone or text messaging,' E.H. and the respondent were required to use OFW for communications.

"41.     In October 2019, E.H. and L.H. filed complaints against the respondent. The disciplinary administrator docketed the two complaints under one complaint number for investigation.

"42.     In December 2019, the respondent accepted and acknowledged that he is an alcoholic.

"a.     In January 2020, the respondent completed a 30-day inpatient substance abuse treatment program. Following the in-patient treatment, the respondent continued his treatment with intensive outpatient treatment.

"b.     The respondent also began attending one or two AA meetings per week, obtained an AA sponsor, and started working on the 12 steps of recovery.

"c.     The respondent also entered into a one-year KALAP monitoring agreement.

8

"d.     Following treatment, the respondent has relapsed into alcohol use on at least six occasions.

"43.     On February 10, 2020, the respondent entered a plea of guilty to the charge of battery in municipal court. The respondent and the assistant city attorney entered a deferred judgment agreement. The municipal court placed the respondent's case on the deferred judgment docket. As part of the deferred judgment agreement, the respondent was required to report to a probation officer monthly and within six months:

"a.     obtain a batterer's intervention assessment, follow all recommendations, and provide proof of completion;
"b.     obtain a mental health evaluation, follow all recommendations, and provide proof of completion;
"c.     obtain a drug/alcohol evaluation, follow all recommendations, and provide proof of completion; and
"d.     attend an approved parenting class and provide proof of completion.

Under the deferred judgment agreement, the respondent was also required to refrain from using alcohol or drugs, refrain from possessing guns, refrain from violating the law, and pay the fines and fees assessed in the municipal court case. Finally, he was required to have no contact with E.H. and E.H.'s parents.

"44.     The respondent owns two guns. Based on the respondent's restrictions under the deferred judgment agreement, the respondent asked J.J. to change the combination on the gun safe so he could not access the guns. However, the gun remained in the respondent's home.

"45.     The respondent relapsed in March 2020 and again in late summer 2020.

"46.     On August 31, 2020, the respondent provided a written response to the complaints. The respondent supplemented his response in December 2020 and in June 2021. In his responses, he admitted that he was aggressive, irrational, resentful, and angry. In addition, the respondent included inaccurate information in the responses. For

9

example, in the respondent's December 2020 response, he falsely stated '[b]efore I went to treatment, I sought help from a psychologist, who diagnosed me with anxiety disorder and prescribed medication for me, which I still take.'

"47.      On September 3, 2020, the assistant city attorney filed a motion to terminate the respondent's deferred judgment agreement. In the motion, the assistant city attorney alleged that the respondent failed to:

"a.      complete a batterer's intervention 24-week program and provide proof of completion;
"b.      obtain a mental health evaluation, following all recommendations, and provide proof of completion; and
"c.      obtain a drug and alcohol evaluation, follow all recommendations, and provide proof of completion.

"48.      On September 25, 2020, the respondent filed a motion to modify the protection from abuse order. Specifically, the respondent asked that the protection from abuse order be dismissed with prejudice. Even though E.H. was represented by Mr. Olson, the respondent did not serve Mr. Olson with the motion to modify the protection from abuse order. Mr. Olson did not learn of the motion until three days before it was scheduled for hearing.

"49.      On October 27, 2020, E.H. filed an amended verified motion to modify residency and parenting time. In the amended motion, because the respondent's behavior continued to be erratic and because the respondent had not completed the terms of the deferred judgment agreement, E.H. requested that she be awarded sole legal custody and that the respondent's parenting time be suspended until the protection from abuse order was dismissed and the respondent completed the requirements of the deferred judgment agreement in the criminal case.

"50.      On October 29, 2020, E.H. agreed to dismiss the protection from abuse order. As a result, the district court dismissed the protection from abuse order. Even after

the protection from abuse order was dismissed, the respondent was prohibited from contacting E.H. under the deferred judgment agreement.

"51.    On December 9, 2020, the district court granted, in part, E.H.'s motion to modify residency and parenting time. In its order, the district court found 'that [respondent]'s behavior [was] the worst case of emotional abuse that the Court [had] seen during its tenure on the bench.' The district court ordered that the respondent have supervised parenting time for four hours every other Saturday. The district court also awarded a judgment in E.H.'s favor for child support arrearage in the amount of $7,833.00.

"52.    In January 2021, the respondent relapsed again.

"53.    On February 20, 2021, someone attempted to break into the respondent's home. J.J. retrieved a gun from the gun safe and gave it to the respondent. The respondent went outside with a flashlight and the gun. The respondent found a man kicking the respondent's garage door. The respondent ordered the man to get on the ground. He pointed the gun at the man until the police arrived. After the police arrived, the respondent gave the gun back to J.J. and she locked the gun in the safe.

"54.    On March 16, 2021, the assistant city attorney filed an amended motion to terminate the respondent's deferred judgment agreement. In that motion, the assistant city attorney alleged that the respondent:

"a.    failed to obtain a drug and alcohol evaluation, follow all recommendations, and provide proof of completion;
"b.    was in possession of a gun on February 20, 2021; and
"c.    failed to pay the fines and fees associated with the municipal court case.

"55.    In March 2021, the respondent relapsed again.

11

"56.     In late March 2021, the respondent suffered a debilitating panic attack and was hospitalized. While hospitalized, the respondent's treating physician changed the respondent's medication.

"57.     In mid or late April 2021, the respondent relapsed again.

"58.     On May 3, 2021, the respondent consumed alcoholic beverages. While intoxicated, the respondent argued with his wife and his 15-year old step-daughter. During the argument, the respondent repeatedly told his step-daughter that her father was a rapist and that her father raped her mother. The respondent stopped the child from entering a hallway leading to her bedroom by blocking a doorway. The respondent refused to move so the child could enter the hallway. J.J. intervened and told the child to take a different path to her bedroom. When J.J. intervened, the respondent used his elbow to hit J.J., striking her on her left cheek right below her left eye, leaving a bruise. The respondent's step-daughter observed the respondent strike J.J.'s face using his elbow. The Wichita police officers placed the respondent under arrest and charged him with domestic battery.

"59.     In a supplemental response to the disciplinary complaints, the respondent described the battery on J.J. as follows, '[d]uring the argument in the hallway, I put my hands up in surrender, walked past my wife in the hallway, and my elbow inadvertently hit her cheek.' During the hearing on the formal complaint, the respondent testified that his elbow inadvertently struck J.J. in the face. Based on all the evidence before the hearing, the hearing panel concludes that the respondent's statement in his response and his testimony was misleading.

"60.     While the respondent was being arrested, he demanded that the officers also arrest J.J., because days earlier J.J. struck the respondent. At that time, the respondent wanted J.J. to be arrested so her children, his step-children, would be placed in foster care. The officers investigated the respondent's allegation and learned that during an argument earlier in the week, the respondent engaged in similar berating conduct, telling his step-daughter that her father was a rapist.

12

"61.     In mid-May 2021, the respondent began taking impulse control medication.

"62.     On May 14, 2021, the assistant city attorney filed a second amended motion to terminate the respondent's deferred judgment agreement. In the third motion, the assistant city attorney alleged that the respondent:

"a.     was charged with another criminal offense;
"b.     failed to obtain a drug and alcohol evaluation, follow all recommendations, and provide proof of completion;
"c.     was in possession of a gun on February 20, 2021; and
"d.     failed to pay the fines and fees associated with the municipal court case.

"63.     At the time of the hearing on the formal complaint, the respondent testified that he consumed his last drink of alcohol on May 21, 2021.

"64.     On May 24, 2021, the respondent moved into a sober living community called Oxford House. There the respondent was required to follow the rules and submit to random testing. The respondent remained at Oxford house until the end of July 2021.

"65.     Because the respondent failed to comply with the requirements of the deferred judgment agreement, the municipal court removed the respondent's case from the deferred judgment docket and proceeded with sentencing. Additionally, on September 9, 2021, the respondent entered a plea of no contest to the domestic battery charge stemming from the events of May 3, 2021, when the respondent struck J.J.'s face with his elbow. That same day, the municipal court sentenced the respondent to serve five days in jail followed by supervised probation. The municipal court ordered the respondent to report to jail to serve his sentence on September 23, 2021, the day after the hearing on the formal complaint. As part of his probation, the respondent is subject to random drug and alcohol testing.

13

"66.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 3.1 (meritorious claims), KRPC 3.4 (fairness to opposing party and counsel), KRPC 4.2 (communication with a represented person), KRPC 8.3 (reporting professional misconduct), KRPC 8.4(c) (engaging in professional misconduct that involves dishonesty), KRPC 8.4(d) (engaging in professional misconduct prejudicial to the administration of justice), KRPC 8.4(g) (engaging in professional misconduct that adversely reflects on the lawyer's fitness as a lawyer), and Rule 219 (reporting a criminal charge), as detailed below.

"67.     During the hearing on the formal complaint, the disciplinary administrator withdrew the allegations that the respondent violated KRPC 4.1 (truthfulness in statements to others) and KRPC 4.3 (dealing with unrepresented persons).

"68.     In the formal complaint, the disciplinary administrator also charged the respondent with KRPC 3.2 (expediting litigation), KRPC 4.4 (respect for rights of third persons), and Rule 210 (cooperation). In his answer, the respondent admitted that he violated the Kansas Rules of Professional Conduct. During the prehearing conference, counsel for the respondent clarified that the respondent admitted to violating the rules alleged in the formal complaint. However, for the hearing panel to conclude that the respondent violated a rule, there must be clear and convincing evidence in the record to support the violation. The hearing panel concludes that the disciplinary administrator failed to establish these violations by clear and convincing evidence. Accordingly, the hearing panel hereby dismisses the allegations that the respondent violated KRPC 3.2 (expediting litigation), KRPC 4.4 (respect for rights of third persons), and Rule 210 (cooperation).

"KRPC 3.1

"69.     Attorneys are prohibited from bringing or defending a proceeding unless there is a basis for doing so that is not frivolous. KRPC 3.1. Additionally, '[i]t is professional misconduct for a lawyer to . . . [v]iolate or attempt to violate the rules of

14

professional conduct.' KRPC 8.4(a). In this case, when the respondent threatened to sue E.H. in small claims court and threatened her with a civil conversion suit, the respondent did not have a basis that was not frivolous. The hearing panel concludes that the respondent attempted to violate KRPC 3.1 through his threats to E.H.

## "KRPC 3.4(c)

"70.     Clearly, lawyers must comply with court orders. Specifically, KRPC 3.4(c) provides: '[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' In this case, the respondent violated KRPC 3.4(c). Specifically, the respondent violated the order in the domestic case to pay child support. The district court entered judgment against the respondent in the amount of $7,833 in child support arrearage. The hearing panel concludes that the respondent violated KRPC 3.4(c).

## "KRPC 4.2

"71.     In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order. KRPC 4.2. In this case, the respondent knew that E.H. was represented by counsel throughout the divorce. Despite that knowledge, on several occasions, during the time the respondent was representing himself, the respondent communicated with E.H. regarding the subject of the representation—the divorce. As such, the hearing panel concludes that the respondent violated KRPC 4.2.

## "KRPC 8.3(a), KRPC 8.4(b), and Rule 219

"72.     Attorneys are required to report misconduct. 'A lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules shall inform the appropriate professional authority.' KRPC 8.3(a).

15

"73.    Also, '[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). Committing the crime of domestic battery reflects adversely on a lawyer's fitness as a lawyer. *See In re Angst*, 278 Kan. 500 (2004).

"74.    Finally, Rule 219(c) provides, '[a]n attorney who has been charged with a reportable crime must notify the disciplinary administrator in writing of the charge and court of jurisdiction no later than 14 days after the charge is filed.' A reportable crime includes class A and B misdemeanors and offenses of comparable classification. Domestic battery in the Wichita Municipal Court is a misdemeanor and is an offense of comparable classification to a class B misdemeanor (first offense) and a class A misdemeanor (second or subsequent offense within the preceding five years). *See* Wichita Ordinance number 5.10.025 and K.S.A. 21-5414.

"75.    In this case, the respondent failed to notify the disciplinary administrator that he had been charged with domestic battery for striking J.J.'s face with his elbow on May 3, 2021. (The rules in effect at the time he was charged with domestic battery for hitting the cell phone from E.H.'s hand did not require the respondent to report the domestic battery charge.) Thus, the hearing panel concludes that the respondent violated KRPC 8.3(a) and Rule 219 for failing to report that he had been charged with domestic battery in municipal court in May 2021.

"76.    Further, the municipal court twice-convicted the respondent of domestic battery. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b) by committing criminal acts that reflect adversely on his fitness as a lawyer.

"KRPC 8.4(c)

"77.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct involving dishonesty on several occasions:

16

"a.     On September 3, 2019, while at the baseball practice, the respondent intentionally knocked E.H.'s mobile phone from her hand. At the time the respondent hit the phone, he falsely stated that it was an accident and that something he was holding fell out of his hand and the item knocked the phone from E.H.'s hand. At the hearing on the formal complaint, the respondent admitted that his statement—that something accidentally fell out of his hand, knocking the phone from E.H.'s hand—was dishonest.

"b.     The respondent provided false information to Dr. Parker at the time the respondent underwent the psychological evaluation. According to the respondent's testimony on the formal complaint, the respondent lied to Dr. Parker when discussing his alcohol consumption.

"c.     The respondent provided false information in his response to the initial complaint. In the respondent's December 2020 response, he falsely stated '[b]efore I went to treatment, I sought help from a psychologist, who diagnosed me with anxiety disorder and prescribed medication for me, which I still take.' The respondent's psychologist did not prescribe medication for him, as psychologists do not have the authority to prescribe medication.

"d.     On May 3, 2021, the respondent told the police officers that his wife punched him with a closed fist five times. Later, the respondent modified his statement that his wife punched him with a closed fist two times. However, the respondent now admits that his wife did not punch him with a close fist—rather she slapped him multiple times in an attempt to get the respondent to stop berating his step-daughter and telling his step-daughter that her father is a rapist.

"e.     Also on May 3, 2021, the respondent told the police officers that when his elbow struck his wife's cheek it was inadvertent. The respondent repeated that version of the events in his response to the disciplinary administrator's office and his testimony before the hearing panel. After considering all the evidence including the video recorded interviews of J.J. and the respondent's step-daughter and considering the respondent's testimony that he had been drinking that evening, the hearing panel concludes that the respondent engaged in dishonest conduct when he characterized the battery on J.J. as inadvertent.

As such, the hearing panel concludes that the respondent repeatedly engaged in dishonest conduct, in violation of KRPC 8.4(c).

17

"KRPC 8.4(d)

"78.      'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he inundated E.H. with text messages and refused to communicate with E.H. by OFW. As a result of the respondent's refusal to communicate with E.H. through OFW, E.H.'s attorney filed a motion to limit communication, the district court heard the motion, and the district court issued an agreed order limiting the communication between the respondent and E.H. Additionally, the respondent engaged in conduct that was prejudicial to the administration of justice when he filed a motion to modify the protection from abuse order in September 2020 and rather than serve the motion on E.H.'s attorney, the respondent had E.H. served personally. E.H.'s attorney did not learn about the motion until just a few days before the scheduled hearing on the motion. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"KRPC 8.4(g)

"79.      'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent repeatedly engaged in conduct that adversely reflects on his fitness to practice law, when he:

"a.      consumed alcohol before work and during lunch when employed as an attorney engaged in the practice of law;

"b.      refused to communicate with E.H. through OFW;

"c.      inundated E.H. with unnecessary text messages;

"d.      contacted E.H.'s attorney at times when he was represented by counsel;

"e.      refused to allow two of E.H.'s family members to pick up the children following parenting time;

18

"f.    threatened and harassed the parents and coaches of his son's baseball team to such a degree that the coach indicated that the child would be removed from the team if the respondent's conduct continued;

"g.    sent several email messages to E.H.'s attorney asking the attorney to agree that a week consisted of seven 24 hour periods of time;

"h.    accused E.H.'s attorney of an ethics violation for allowing E.H.'s parents to attend an attorney meeting;

"i.    made unreasonable demands during the divorce, including insisting that E.H. agree to include language in the divorce decree that neither E.H. nor the respondent would be permitted to remarry anyone but each other;

"j.    followed, harassed, humiliated, and publicly disparaged E.H. during a child's soccer game and removed their child from E.H.'s lap because it was his parenting time;

"k.    followed L.H. at the baseball field, called L.H. profane names, disparaged L.H.'s wife, stated that he hoped L.H. had deep pockets, leaned against L.H. as he sat in a lawn chair, repeatedly whispered demeaning comments to L.H., and touched L.H.'s ear with his lips when whispering demeaning comments to L.H.;

"l.    demeaned E.H. at the baseball field, leaned against E.H. and her son's legs, knocked the mobile phone from her hand, stated that he hoped E.H. had deep pockets because 'this is a $20,000 project,' humiliated E.H. and their children by his harassing and disturbing comments, and frightened E.H., her children, and the respondent's step-children;

"m.    failed to comply with the terms of the deferred judgment agreement;

"n.    berated his 15-year old step-daughter on multiple occasions, blocked her from using a hallway to access her bedroom, repeatedly told his step-daughter that her father is a rapist, and struck J.J. in the face with his elbow;

"o.    demanded that his wife be arrested so that his children would be placed in foster care; and

"p.    failed to timely pay his child support, resulting in a judgment of arrearage in the amount of $7,833.

Thus, the hearing panel concludes that the respondent repeatedly violated KRPC 8.4(g).

19

"80.      In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Under Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"81.      *Duty Violated*. The respondent violated his duty to the public and the legal profession to maintain his personal integrity. The respondent also violated his duty to the legal system to refrain from engaging in conduct that is prejudicial to the administration of justice.

"82.      *Mental State*. The respondent knowingly violated his duties.

"83.      *Injury*. As a result of the respondent's misconduct, the respondent caused actual serious injury to E.H., J.J., and their children as well as the legal system and the legal profession.

"Aggravating and Mitigating Factors

"84.      Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"85.      *Prior Disciplinary Offenses*. The respondent has been previously disciplined on one occasion. In 2014, the respondent entered the attorney diversion program for violating KRPC 7.3 (solicitation of clients). In that case, the respondent learned of a lawsuit by looking at PACER, the federal court system for Public Access to Court Electronic Records. The respondent contacted the defendant in the case and forwarded a copy of the petition which had been filed in the case. The defendant was

represented by counsel at the time. The respondent successfully completed the attorney diversion program.

"86.    *Dishonest or Selfish Motive*. While there is no evidence that the respondent was motivated by dishonesty, there was evidence that the respondent's misconduct was motivated by selfishness. The respondent's misconduct involved his attempts to control E.H., their children, the divorce proceedings, the language of the divorce decree, E.H.'s future, J.J., and her children. The respondent's need to control is based on selfishness. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by selfishness.

"87.    *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. When the respondent struck the cell phone while in E.H.'s hand, the respondent committed the crime of battery. Also, when the respondent struck J.J. with his elbow, leaving a bruise, he committed the crime of battery. Further, over an extended period of time, the respondent engaged in obstructionist conduct in the divorce case and continually sent text messages to E.H. that were demeaning and unnecessary.

"88.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 3.4 (fairness to opposing party and counsel), KRPC 4.2 (communication with represented persons), KRPC 8.3 (reporting professional misconduct), KRPC 8.4 (professional misconduct), and Rule 219 (reporting a criminal charge). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"89.    *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process*. In the respondent's responses to the initial complaints, the respondent included inaccurate information. At the hearing on the formal complaint, the respondent refused to acknowledge that when he struck J.J. with his elbow it was anything more than inadvertence. Additionally, the following exchange occurred between the respondent and Ms. Selzler Lippert:

21

'Q.     [By Ms. Selzler Lippert] So this motion to terminate filed September 3rd was just a mistake?'

'A.     [By the respondent] Yes.'

'Q.     And you are describing it here today as a mistake?'

'A.     Yes. 'Um, Ms.—Ms. Schrock, the prosecutor, has not had any intention of terminating the deferred judgment.'

'Q.     Well, we don't have any testimony from her in that regard, so are you—do you have some document that would indicate that?'

'A.     No. Simply the reality that the deferred judgment wasn't terminated and that it continued and I accomplished the tasks.'

However, on September 9, 2021, the deferred judgment agreement was terminated, the municipal court found the respondent guilty of domestic battery, and the court sentenced the respondent that same day. The respondent's testimony that he completed the deferred judgment was deceptive. *But see* Transcript, p. 77. (The respondent admitted that the deferred judgment was not completed.) The hearing panel is troubled by the respondent's attempt to minimize his conduct through deceptive testimony.

"90.     *Vulnerability of Victim*. The respondent's children, the respondent's step-children, E.H., L.H., and J.J. were vulnerable to the respondent's misconduct.

"91.     *Illegal Conduct, Including that Involving the Use of Controlled Substances.* The municipal court convicted the respondent twice of domestic battery. The respondent's criminal conduct is a significant aggravating factor.

"92.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"93.     *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from alcoholism and anxiety. Because of the respondent's anxiety, he was voluntarily

22

hospitalized in April 2021. Further, the respondent testified in great detail regarding his alcohol addiction. It is clear that the respondent's alcoholism directly contributed to his misconduct. The respondent's participation in psychological treatment and period of sobriety further mitigates the misconduct.

"94.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent cooperated with the disciplinary process by providing written responses to the initial complaints. Additionally, in the respondent's answer, he admitted the facts that gave rise to the violations. The mitigation related to this factor is reduced by the respondent's failure to provide accurate information in the written responses.

"95.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the bar of Wichita, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"96.     *Imposition of Other Penalties or Sanctions*. The respondent has experienced other sanctions for his . . . conduct. The respondent was convicted of two counts of domestic battery. As a result of his convictions, the municipal court ordered the respondent to serve five days in jail followed by supervised probation.

"97.     *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"98.     *Remoteness of Prior Offenses.* The misconduct which gave rise to the respondent's participation in the attorney diversion program in 2014 is remote in time and character to the misconduct in this case.

"99.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

'6.22    Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.'

'6.32    Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding.'

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation of the Parties*

"100.    The disciplinary administrator recommended that the respondent be suspended from the practice of law for one year. The disciplinary administrator further recommended that the respondent serve six months of the suspension and then be placed on probation for three years.

"101.    Counsel for the respondent recommended that the respondent be indefinitely suspended from the practice of law, but that the imposition of the suspension be suspended and the respondent be placed on probation for a period of three years under his proposed plan.

24

"102.    When a respondent requests probation, the hearing panel is required to consider Rule 227, which provides:

'(d)    Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

'(1)    the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

'(2)    the misconduct can be corrected by probation; and

'(3)    placing the respondent on probation is in the best interests of the legal profession and the public.'

"103.    The respondent developed a workable plan of probation. However, the respondent's plan of probation was not substantial and detailed enough to resolve the issues in this case. To ensure that the respondent does not repeat the misconduct, additional safeguards need to be included in the plan of probation.

"104.    The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel more than 14 days before the hearing on the formal complaint. The respondent put the proposed plan of probation into effect before the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan.

"105.    Whether the misconduct, in this case, can be corrected by probation is a difficult question to answer. The respondent's misconduct involved criminal conduct, failure to comply with court orders, conduct that prejudiced justice, dishonest conduct, and conduct that adversely reflects on his fitness as a lawyer. Certainly, safeguards can be put into place to address some of the respondent's misconduct. However, some of the

25

misconduct, in this case, cannot be corrected by probation. Specifically, dishonest conduct cannot be effectively supervised. *See In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013) ('Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.').

"106.   Finally, placing the respondent directly on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"*Discussion*

"107.   The hearing panel is disturbed by the respondent's treatment of his children, his step-children, E.H., L.H., and J.J. The hearing panel concurs in the district court's comments regarding the respondent's severe emotional abuse of his family members.

"108.   The hearing panel is troubled by the respondent's violation of court orders. Compliance with orders of the court is a fundamental necessity.

"109.   Finally, the hearing panel is also bothered by the portions of the respondent's testimony during the hearing on the formal complaint. The hearing panel concludes that the respondent minimized his conduct—he did not fully admit to misconduct unless the misconduct was recorded.

"110.   On the other hand, the hearing panel is encouraged by the strides that the respondent has made. As of the hearing date, the respondent had been sober since May 21, 2021. The respondent acknowledged the wrongful nature of his misconduct. He demonstrated a genuine desire to not repeat his misconduct.

"111.   Because of the serious nature of the respondent's misconduct and because the hearing panel may not recommend probation under Rule 227(d), the hearing panel concludes that a period of suspension is warranted in this case. The hearing panel hopes that the respondent was honest in his statement that he would accept the discipline

26

imposed with gratitude. The hearing panel is hopeful that the respondent will use this time to continue to develop the skills and tools he needs to maintain his sobriety and civility.

"*Recommendation of the Hearing Panel*

"112.    Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the Court suspend the respondent's license to practice law for two years. The hearing panel further recommends that after the respondent serves six months of the suspension, the Court place the respondent on probation for three years, subject to the terms and conditions in the respondent's proposed plan of probation and also subject to the following additional terms and conditions:

"a.      The respondent will not consume any alcoholic or cereal malt beverages.

"b.      The respondent will extend his KALAP monitoring agreement to continue throughout the respondent's term of probation. The respondent will submit to random urinalysis tests for alcoholic and cereal malt beverages as directed by his KALAP monitor or by KALAP staff.

"c.      The respondent will not violate any orders of any court.

"d.      The respondent will meet with the practice supervisor in person on a monthly basis. In addition, the practice supervisor will also have unscheduled meetings with the respondent from time to time.

"e.      The respondent will successfully complete the criminal probation through the municipal court.

"113.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, we consider the evidence and the disciplinary panel's findings of fact to determine whether sufficient evidence justifies those findings. We then consider sufficiently supported findings and arguments of the parties to determine whether violations of KRPC occurred and, if they did, the appropriate discipline to impose. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent had adequate notice of the formal complaint, the hearing before the panel, and the hearing before this court. The respondent filed an answer to the complaint and had the opportunity to present evidence to the panel. He provided a detailed probation plan to the Disciplinary Administrator and each member of the hearing panel prior to the hearing on the formal complaint. The respondent had the opportunity to present arguments to the panel and to this court. He also had the opportunity to take exception to the hearing panel's findings and conclusions, as set forth in its final hearing report. The respondent chose to take no exceptions.

With no exceptions before us, the panel's factual findings and conclusions of law are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2022 Kan. S. Ct. R. at 287). We find those facts establish by clear and convincing evidence the charged misconduct in violation of KRPC 3.1 (2022 Kan. S. Ct. R. at 390) (meritorious claims); KRPC 3.4 (2022 Kan. S. Ct. R. at 395) (fairness to opposing party and counsel); KRPC 4.2 (2022 Kan. S. Ct. R. at 404) (communication with a represented person); KRPC 8.3 (2022 Kan.

S. Ct. R. at 433) (reporting professional misconduct); KRPC 8.4(c) (2022 Kan. S. Ct. R. at 434) (engaging in professional misconduct that involves dishonesty); KRPC 8.4(d) (2022 Kan. S. Ct. R. at 434) (engaging in professional misconduct prejudicial to the administration of justice); KRPC 8.4(g) (2022 Kan. S. Ct. R. at 434) (engaging in professional misconduct that adversely reflects on the lawyer's fitness as a lawyer); and Supreme Court Rule 219 (2022 Kan. S. Ct. R. at 273) (reporting a criminal charge). The evidence supports the panel's conclusions of law. We thus adopt the panel's findings of fact and conclusions of law.

The only remaining issue is to decide the appropriate discipline for these violations. This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017).

During oral arguments, the disciplinary attorney advised us that respondent has not complied with Supreme Court Rule 227(f) (2022 Kan. S. Ct. R. at 283), which requires respondent to file an affidavit of compliance with the terms of his probation plan. No such affidavit was filed. In addition, respondent was to provide reports to the Disciplinary Administrator, but the Disciplinary Administrator's office did not receive any. Aside from the absence of paperwork, both parties gave us information about the abrupt termination of services from the respondent's therapist, but the parties' only common point of agreement was that the services were terminated. There was no agreement as to *why* the services were terminated. Since we are not a fact-finding court, we take no position concerning the reasons for the therapist's absence and consequent inability to provide therapy to the respondent and reports to the Disciplinary Administrator. Regardless, the current absence of therapy—as contemplated by the respondent's probation plan—is troubling, without even considering efforts to replace the absent therapist. The plan's

requirement that respondent receive intense therapy implies the respondent *needs* therapy and we know at the time of the hearing he was not getting it.

Ultimately, the Disciplinary Administrator's office recommends the sanction of suspension for one year, plus the requirement of a reinstatement hearing before respondent is again allowed to practice law.

The respondent agrees to a reinstatement hearing, but recommends only a six-month suspension, which would allow him to keep his current position as a paralegal with a law firm (with the potential to regain his attorney status upon reinstatement). After six months, respondent requests the ability to petition our court for reinstatement, knowing that any hearing on the petition will take some time to be resolved. Respondent would be responsible to show us why he should be allowed reinstatement to practice law.

In most attorney discipline cases, our goals are not only to punish ethical violations and protect the public, although those goals must always be paramount. See *In re Jones*, 252 Kan. 236, 241, 843 P.2d 709 (1992). We also endeavor to use this process, if possible, to help salvage careers. Sometimes we cannot. We recognize that dependency and mental health issues are different than criminal activity and should be treated differently. We see those issues here, but we also see ethical violations which caused personal and distressing harm, even abuse—abuse which resulted in two criminal convictions for domestic battery against two separate victims. We do not take these circumstances lightly.

Considering the findings, conclusions, mitigating circumstances, and aggravating circumstances, we hold that Jason M. Janoski shall be suspended from the practice of law in the state of Kansas for a period of one year, effective on the filing of this opinion, though a minority of the court would impose a lesser sanction. After respondent has

served 12 months' suspension, the respondent will be allowed to petition for reinstatement to the practice of law. Whether we grant a hearing on that petition will, of course, depend on what the respondent presents in support. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Jason M. Janoski is suspended for one year from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(3) (2022 Kan. S. Ct. R. at 281) for violations of KRPC 3.1, KRPC 3.4, KRPC 4.2, KRPC 8.3, KRPC 8.4(c), KRPC 8.4(d), KRPC 8.4(g), and Supreme Court Rule 219.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2022 Kan. S. Ct. R. at 292).

IT IS FURTHER ORDERED that if respondent applies for reinstatement, he shall comply with Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293) and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

31