IN THE SUPREME COURT OF THE STATE OF KANSAS

CCR No. 1364

In the Matter of DANA BURKDOLL,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held September 15, 2023. Opinion filed February 2, 2024. Twelve months' probation.

*Todd N. Thompson*, appointed disciplinary counsel for the State Board of Examiners of Court Reporters, argued the cause and was on the brief for the petitioner.

*James B. Biggs*, of Cavanaugh, Biggs & Lemon, P.A., of Topeka, argued the cause and was on the brief for the respondent.

PER CURIAM:  This is an original proceeding in discipline filed by the State Board of Examiners of Court Reporters (Board) against respondent, Dana Burkdoll, a court reporter.

On July 11, 2022, a Notice of Hearing was filed alleging that respondent engaged in conduct in three different cases which violated the provisions of Supreme Court Rule 367 (2023 Kan. S. Ct. R. at 464), Rules Adopted by the State Board of Examiners of Court Reporters, Board Rules Nos. 9.F.2, professional incompetency; 9.F.3, knowingly making misleading, deceptive, untrue, or fraudulent representations as a court reporter; and 9.F.6, fraud in representations relating to skill or ability as a court reporter. (2023 Kan. S. Ct. R. at 468-69). Respondent was served with the Notice of Hearing on July 11, 2022.

1

The parties filed a stipulation of facts for each of the three cases on August 1, 2022, which the Board ultimately adopted and incorporated into its findings:

"STIPULATION OF FACTS
"(Attorney General's Office [CCR 1364-07-2021])

"The parties hereby stipulate to the following facts:

"1.     Between 5-10-21 and 5-26-21, Respondent was the reporter for nine depositions in *Peppiatt v. State of Kansas* in the U.S. District Court for the District of Kansas, Case No. 20-CV-1257.

"2.     On 6-21-21, defendant's counsel contacted Respondent to check on the status of the transcripts.

"3.     Respondent represented she would 'get all of them to you this week,' and that 'the first set' was already 'completed.'

"4.     Having not received the transcripts by 6-29-21, defense counsel Shon D. Qualseth sent an email that received no response.

"5.     On 7-6-21, Respondent was contacted by plaintiff's counsel regarding the promised transcripts. Respondent represented that the parties 'should expect them today.'

"6.     On several other occasions, Respondent received requests from counsel involved in the case for the transcripts of the depositions.

"7.     Respondent made various excuses for why the transcripts were not completed, and repeatedly promised delivery of the transcripts.

"8.     On 7-12-21, the parties filed a Joint Motion for Extension of Time to File Motion for Summary Judgment.

"9.     . . . .

"10.    The Court granted the parties' Motion and extended the deadline to file dispositive motions to 9-7-21.

"11.    On 7-26-21, Respondent emailed parties' counsel and stated that she was 'assisting David in production to get the finals out to you in the next two day [sic], so you all can meet your deadlines.'

"12.    The dispositive motion deadline was 8-1-21.

"13.    On 8-10-21, defendant's counsel contacted Respondent by email to check on the status of the deposition transcripts.

"14.    Respondent advised with the following:  'The transcripts are being process [sic], I have attached two of the drafts I am proofing first.  During my absence, the new proofers were checking these over, and will send finals asap.'

"15.    Respondent sent another response by email that stated in part:  'On Personal Note, I had a COVID death 3 weeks ago, in my immediate family.  So again the delay is on me as the reporter, but rectifying immediately.'

"16.    On 8-17-21, the Kansas Department of Administration sent an email to Respondent inquiring about the status of the transcripts.  Respondent has no record of the email.

"17.    Respondent advised to the Department of Administration:  'Received . . . we at Midwest Reports is [sic] back on track . . .'

"18. On 8-19-21, defendant's counsel had a deposition with Respondent in an unrelated case. Respondent stated that the two drafts she had attached to her 8-10-21 email were in such bad shape that she would send out revised transcripts for the witnesses' review.

"19. (This item intentionally left blank.)

"20. On 8-23-21, defendant's counsel reviewed the final transcript from the interrupted deposition taken on 8-19-21 in the aforementioned unrelated case. It was largely error-free.

"21. On 8-23-21, Respondent again responded to the Department of Administration's request: 'All Hutchinson Correctional will go out to Shon and his office today, and he will have all seven before end of week to meet his court deadlines.'

"22. On 9-1-21, the parties received drafts of two of the *Peppiatt* deposition transcripts.

"23. On 9-3-21, a Status Conference was held with Judge Lungstrum in the *Peppiatt* case. Respondent indicates she had no information or knowledge regarding this.

"24. A joint oral Motion to Stay the case was granted.

"25. All deadlines and the trial were stayed.

"26. The parties were ordered to provide a status report in 60 days if they had not received the deposition transcripts. Respondent indicates she had no information or knowledge regarding this.

"27. On 9-8-21, counsel received an email from Respondent: '[W]e are completing the last few deposition this week in *Pepp*[*ia*]*tt* case, and we will continue to email them over. . . . But by Sunday of this week should all be completed, with the help and assistance I have in the office now.'

"28.  On 10-5-21, the parties received a draft of a third deposition transcript.

"29.  In response, plaintiff's counsel wrote to Respondent:  'The Final Transcript you attached is not complete.  It ends on page 8, essentially when the depo was just starting.'

"30.  Plaintiff's counsel also listed the transcripts of the witnesses the parties were waiting on.

"31.  Respondent advised:  'We made the wrong PDF.  Will resend.'

"32.  On 10-5-21, the parties received the first complete transcript.

"33.  The witness had no changes to the transcript.

"34.  On 10-6-21, the parties received two more complete transcripts.

"35.  The witnesses made minor changes to the transcripts.

"36.  On 10-18-21, Respondent emailed counsel:  'The balance of finals will be done in the next few days here in office, as I subbed them out to an outside proofers and they came back needing to have more work done to them . . . [M]y priority are these *Peppiatt* files for the next few days.'

"37.  On 10-29-21, Defendants' counsel asked for a status update from Respondent on the remaining transcripts.

"38.  Respondent advised:  'The update will be to everyone on the email by Monday [11/1/21].  They are almost done and will update you then.'

"39.  On 11-2-21, Respondent emailed counsel at 8:21 a.m.:  'Will have the update to you by noon today.'

5

"40.   At 12:16 p.m., Respondent emailed counsel:  'Please report to Judge Lundstrum [sic] on Friday, November 5th, the balance of the *Peppiatt* Transcripts will be delivered to all Parties.'  Respondent then listed only five of the six outstanding depositions.

"41.   Plaintiff's counsel emailed Respondent to ask about the status of defendant Van Hoose's transcript.  Respondent advised:  'His is done.  Will resend from production today.'

"42.   As of 11-2-21, the parties had not received transcripts for six of the depositions.

"43.   On 11-2-21, the parties filed a Status Report.  In the Report, the parties jointly moved for an order to compel Respondent to produce final, completed transcripts by 11-19-21.  Respondent indicates she had no information or knowledge regarding this.

"44.   The Status Report was emailed to Respondent.

"45.   The Court extended the stay of all proceedings through 12-15-21, with another Status Report due on the same day.

"46.   The Court retained under advisement the parties' Motion to Compel the production of the remaining transcripts.

"47.   On 11-4-21, attorney Shon Qualseth of the Attorney General's office submitted a complaint to the Board of Examiners of Court Reporters on behalf of several attorneys in the Attorney General's office, including Bryan Ross, Art Chalmers, and Natasha Carter (now general counsel at the Department of Corrections).

"48.   The Board notified Respondent of the complaint submitted against her. Respondent indicates no information was sent to her.

6

"49. On 11-5-21, the parties received the fourth complete transcript. Respondent sent an email to the parties: 'The finals of all *Peppiatt* Transcripts our MWR Production will resend to everyone on email list . . . And send hardcopies of all *Peppiatt* finals to both offices.'

"50. On 11-22-21, the parties received seven draft and final transcripts of the nine depositions taken.

"51. On 11-22-21, Plaintiff's counsel emailed Respondent stating the parties had not received a transcript of defendant Williams or of plaintiff's testimony.

"52. Respondent advised: 'Will have production resend the correct documents to all in email. It will be a little later today, but will be done.'

"53. On 11-22-21, Respondent contacted Judge Lungstrum's courtroom deputy, Sharon Scheurer, for permission to 'get the 3 draft files to the parties before 11/24/21.' Judge Lungstrum granted permission.

"54. 11-28-21, the parties received a 'final' version of one witness's transcript. Other than misspelling one name, there were no errors.

"55. On 11-29-21, the parties received a 'final' version of defendant Van Hoose's transcript. There were no errors.

"56. On 12-14-21, the parties filed a Second Status Report. Respondent indicates she had no information or knowledge regarding this.

"57. As of 12-14-21, the parties had not received the two remaining transcripts.

"58. The Second Status Report was emailed to Respondent. Respondent indicates she had no information or knowledge regarding this.

7

"59.   The parties again jointly moved for an Order to Compel Respondent to produce final, completed transcripts this time by 12-31-21.

"60.   On 12-15-21, the Court extended the stay of all proceedings through 1-21-22, with another Status Report due on the same day.

"61.   The Court retained under advisement the parties' Motion to Compel the production of the remaining transcripts.

"62.   On 1-7-22, defendants' counsel again asked Respondent for a status update on the remaining transcripts.

"63.   Respondent advised:  'Tommy and Erin's files will be to you this weekend in electronic format.  Hardcopies Monday 1/10/22.'

"64.   On 1-14-22, the parties received plaintiff's deposition transcript.  There were no errors.

"65.   On 1-21-22, the parties filed a Third Status Report.  As of that date, the parties had not received the one remaining transcript.

"66.   The Third Status Report was emailed to Respondent.

"67.   The parties again jointly moved for an Order to Compel Respondent to produce final, completed transcripts this time by 2-4-22.

"68.   On 1-22-22, the parties received the one remaining transcript (defendant Williams's deposition).

"69.   On 1-24-22, the parties received copies of exhibits used in defendant Williams's deposition.

"70. On 1-25-22, the Court ordered the stay to continue to 2-25-22.

"71. . . . .

"72. The court further ordered that Respondent was admonished that if the final completed transcripts were not delivered to counsel by 2-4-22, the Court will consider moving forward at that time on the parties' request for a Motion to Compel.

"73. On 2-21-22, defendant's counsel furnished the errata sheet for defendant Williams's deposition. Other than errors regarding names, there were no other errors.

"74. On 2-25-22, the parties filed a Fourth Status Report with the Court. The parties stated that they had finally received all deposition transcripts and were ready for the Court to establish deadlines to move the case forward. Respondent indicates she had no information or knowledge regarding this.

"75. The dispositive motion deadline that was originally scheduled to 8-2-21 was rescheduled to 4-8-22.

"76. The jury trial previously scheduled for 1-18-22, was rescheduled for 9-19-22. Respondent indicates she had no information or knowledge regarding this."

"STIPULATION OF FACTS
"(McCray Complaint [CCR 1364-08-2021])

"The parties hereby stipulate to the following facts:

"1. On 6-29-21, Respondent was the reporter for the deposition of defendant Alan Gast in Riley County District Court Case No. 2020-CV-000065, *Reynolds v. Gast, et al.*

"2. On 8-5-21, at 3:22 p.m., Respondent received a request for the transcripts from Cheryl Little, a paralegal at Norris Keplinger Hicks & Welder in Leawood, KS.

9

"3.     On 8-20-21, at 11:56 a.m., Respondent replied to the request:  'Cheryl; Wanted to updated you and Mr. Norris and your office. We are finishing up Mr. Gates final and will have to you this weekend. But wanted to send an update.'

"4.     On 8-25-21, at 2:32 p.m., Respondent sent marked exhibits via electronic mail to Ms. Little. Respondent included:  'Received your call today, and final transcript just about done. Will keep you posted today and tomorrow.'

"5.     On 9-10-21, at 2:20 p.m., Respondent received a second request for the transcripts from Ms. Little.

"6.     On 12-8-21, Courtney McCray, an attorney at the firm of Norris, Keplinger, Hicks, & Welder, submitted a complaint to the Board of Examiners of Court Reporters.

"7.     The Board notified Respondent of the complaint submitted against her.

"8.     On 2-7-22, at 9:36 a.m., Respondent confirmed the transcripts were received by attorney McCray.

"9.     On 3-14-22, Respondent submitted a written answer to the complaint.

"10.    In the written answer, Respondent acknowledged the reasons for the delay: '(1). Staffing shortage in 2021,  and court reporter's family members passings from COVID. [Four]  immediate family members,  within a six-month period.  (2). There is no excuse for the delay,  and to delay client,  and all parties.  And all issues for reporter and our reporting office have been remedied.  (3). There were no charges to any client with this case of Reynolds vs. Ebert Mayo,  and sincerest apologies for the delay to all the parties involved in case was made directly.  (4). The COVID Pandemic has made me as a reporter more aware of deadlines,  and to have a backup plan in case the reporter, (myself),  and owner for a freelance firm has to have someone to take over their position in extreme times as I have experienced.'"

"Stipulation of Facts
"(Gibbons Complaint [CCR 1364-01-2022])

"The parties hereby stipulate to the following facts:

"1.    On 11-12-21, Respondent was the reporter for two depositions in Manhattan, KS in the case of *Livingston Enterprises v. Farmers' Cooperative*, CI 18-46, Jefferson County, NE.

"2.    The two depositions were of Dr. Bia and Dr. Jones.

"3.    On 12-14-21, at 8:20 a.m., Respondent received the first written request for the transcripts from Alyssa Osler, a paralegal at Woodke & Gibbons in Omaha, NE.

"4.    On 12-14-21, at 8:45 a.m., Respondent replied to the first request:  'Alyssa; Let me check with my proofer now to see if they are done, And we will get these out to you asap.'

"5.    On 12-16-21, at 9:36 a.m., Respondent received a second written request for the transcripts from Ms. Osler.  Respondent failed to reply to this request.

"6.    On 12-20-21, at 1:39 p.m., Respondent received a third written request for the transcripts from Ms. Osler.

"7.    On 12-20-21, at 1:46 p.m., Respondent replied to the third written request: 'Hi Alyssa:  the finals will be this week, as I am in the office finishing those for your attorneys before the holiday. Apologies for the delay. But it will be in next two days this week.'

"8.    On 12-23-21, at 7:55 a.m., Respondent received a fourth written request for the transcripts from Ms. Osler.

11

"9.	On 12-23-21, at 8:27 a.m., Respondent replied to the fourth written request: 'Hi Alyssa: Thank you for checking in. I am presently working on those 2 files. And will do everything I can to get them to you before 1:00. But if it is after, 1:00 do I still email them to you direct.' Respondent, two minutes later, after receiving an answer to her question, promised the transcripts by the end of that week, 'Yes you will have them to week definite. As I am still in office rest week getting files out.'

"10.	On 12-26-21, at 5:10 p.m., Respondent received a fifth written request for the transcripts from Ms. Osler. Respondent failed to reply to this request.

"11.	On 12-28-21, at 2:08 p.m., Respondent received a sixth written request for the transcripts from Ms. Osler. Respondent failed to reply to this request.

"12.	On 12-29-21, at 4:53 p.m., Respondent received a seventh written request for the transcripts from Michael Gibbons, an attorney at Woodke & Gibbons in Omaha, NE.

"13.	On 12-29-21, at 4:55 p.m., Respondent replied to the seventh written request: 'Mike: They will be done asap. And I am not leaving office until I have sent them to you and Alyssa.'

"14.	On 12-30-21, at 6:59 a.m., Respondent received an eighth written request for the transcripts from attorney Gibbons. Respondent failed to reply to this request.

"15.	On 12-30-21, at 9:04 a.m., Respondent received a ninth written request for the transcripts from Ms. Osler.

"16.	On 12-30-21, at 9:38 a.m., Respondent replied to the ninth written request: 'Yes, Mike has updated me you need these two files asap for expert today after 1:00 p.m.'

"17.	On 12-30-21, at 3:37 p.m., Respondent received a tenth written request for the transcripts from attorney Gibbons.

"18.    On 12-30-21, at 3:38 p.m., Respondent replied to the tenth written request: 'Mike:  Will have file to you soon, and no problems with files, And will have today.'

"19.    On 12-30-21, at 6:34 p.m., Respondent received an eleventh written request for the transcripts from attorney Gibbons.

"20.    On 12-30-21, at 6:35 p.m., Respondent replied to the eleventh written request:  'Mike:  And you will have them by 8.'

"21.    On 12-31-21, after 3:00 p.m., Respondent produced only Dr. Jones's transcript.

"22.    On 1-3-21, at 8:46 a.m., Respondent promised Dr. Bia's transcript by the end of the day to Mary Harrington, an office manager at Woodke & Gibbons in Omaha, NE.

"23.    On 1-4-21, at 6:55 a.m., Respondent received a twelfth written request for Dr. Bia's transcript from Ms. Harrington.

"24.    On 1-4-22, at 7:31 a.m., Respondent replied to the twelfth written request: 'Mary:  Haven't emailed it yet.  And yes the file is in tact, And in office since 5 finishing.'

"25.    On 1-4-22, attorney Gibbons submitted a complaint to the Board of Examiners of Court Reporters.

"26.    The Board notified Respondent of the complaint submitted by attorney Gibbons.

"27.    On 3-14-22, Respondent submitted an answer to the complaint submitted by attorney Gibbons.

13

"28.   In the written answer, Respondent acknowledged the reasons for the delay: '(1). Staffing shortage in 2021, and court reporter's family members passings from COVID. [Four] immediate family members,  within a six-month period. (2). There is no excuse for the delay,  and to delay client,  and all parties.  And all issues for reporter and our reporting office have been remedied.  (3). There were no [charges] to Mr.  Gibbons with this case of Livingston Enterprises,  In.  Vs.  Farmers Corporation, Case No.  CI 18-46,  and sincerest apologies for the delay to all the parties involved in case was made directly.  (4). This delay was due to new staff responses to emails being new and inexperienced.  (5). The COVID Pandemic has made me as a reporter more aware of deadlines,  and to have a backup plan in case the reporter,  (myself), and owner of a freelance firm has to have someone to take over their position in extreme times as I have experienced.'

"29.   Copies of the emails attached to the complaint by attorney Gibbons are true and accurate copies of the actual correspondence with Respondent."

On August 1, 2022, the Board conducted a remote hearing by videoconference regarding respondent's alleged violations. Respondent appeared live and by her counsel. Upon conclusion of the hearing, the Board took the matter under advisement.

On April 10, 2023, the Board filed a Findings, Conclusions, and Recommendation Concerning Discipline. The Board's findings and recommendations adopted and incorporated the parties' stipulations of facts. The Board found clear and convincing evidence of violations of Board Rules Nos. 9.F.2. and 9.F.3 but held that there was not clear and convincing evidence that respondent violated No. 9.F.6. The Board recommended that we place respondent on probation for a period of 12 months, and that during the probationary period, respondent must report information about each pending proceeding to the Board during the first month of each quarter.

Respondent does not contest the findings and conclusion of the Board. Indeed, she stipulated to the facts and admits she violated Board Rule, Nos. 9.F.2. and 9.F.3. We conclude that the findings of the Board establish the alleged misconduct by clear and convincing evidence. We adopt the Board's findings and conclusions and accordingly find respondent engaged in prohibited conduct by displaying professional incompetency and by knowingly making misleading, deceptive, untrue, or fraudulent representations as a court reporter.

The only remaining issue before us is the appropriate discipline for respondent's violations. The Board may recommend the following discipline: (1) public reprimand; (2) imposition of a period of probation with special conditions which may include additional professional education or re-education; (3) suspension of the certificate; or (4) revocation of the certificate. Rule 367, Board Rule, No. 9.E.4 (2023 Kan. S. Ct. R. at 467).

When we impose discipline, we do so with the goal of protecting the public interest and maintaining the public's confidence in the integrity, honor, and dignity of the judicial system. *In re Janoski*, 316 Kan. 370, 389, 516 P.3d 125 (2022); *In re Henderson*, 306 Kan. 62, 71, 392 P.3d 56 (2017). In addition to these goals, we also endeavor to use the disciplinary process to help salvage careers whenever possible. *In re Janoski*, 316 Kan. at 389.

The Board, respondent, and disciplinary counsel all agree probation is appropriate discipline in this case. In support of her requested discipline, respondent argues: (1) she has acknowledged and accepted her fault, (2) she has since taken several measures and employed certain protocols to ensure that such delays would not occur again, (3) she has directly offered sincere apologies for the delay to all affected parties, (4) she never

15

charged the parties for any of the work she had done in their cases, and (5) throughout the period in question, respondent suffered the deaths of four immediate family members within a six-month period, including that of her former husband.

While disciplinary counsel agrees that probation is the appropriate discipline, it urges the court to adjust the recommended probation to require respondent to report to a third party each month, rather than to the Board each quarter. Disciplinary counsel further suggests that this court admonish respondent for her misconduct.

Having considered all matters raised, we find the Board's recommendation for probation to be appropriate, and we decline disciplinary counsel's requested adjustments to the Board's recommendation and its request for additional admonishment.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Dana Burkdoll be and is hereby disciplined by 12 months' probation under the terms and conditions recommended by the Board, effective from the date this opinion is filed, in accordance with Rule 367, No. 9.E.4. of the Rules Adopted by the State Board of Examiners of Court Reporters.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports.